IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LOUIS D. MARTIN, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) )   Case No. CIV-06-756-HE |
| DOCTOR STITES, et al., | ) ) ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff, a state prisoner appearing pro se, brings this action pursuant to 42 U.S.C. § 1983 alleging a violation of his constitutional rights. United States District Judge Joe Heaton referred this case to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). The undersigned ordered officials from the Oklahoma Department of Corrections to prepare a Special Report pursuant to Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1978) (per curiam), which was filed on November 29, 2006. Defendants filed a motion to dismiss/motion for summary judgment to which Plaintiff has responded. Thus, the motion is now at issue. For the following reasons, it is recommended that the motion, construed in part as a motion to dismiss and in part as a motion for summary judgment, be granted.

BACKGROUND

Plaintiff has been in the custody of the Oklahoma Department of Corrections ("DOC") since 1994 when he began serving a 20-year sentence for first degree rape. Special Report, Attachment 1, p. 1.[1] He brings this § 1983 action alleging that Defendant

---

[1] Citations to Attachment page numbers of the Special Report refer to the handwritten page numbers in the upper right corner of each page of the documents included in each Attachment.

Ronald Stites, M.D., a physician employed by the DOC at the Lexington Assessment & Reception Center ("LARC"), and Defendant Jean Bond, employed by the DOC as the Health Administrator at LARC, were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Complaint, pp. 1-2.

Plaintiff is a middle-aged male afflicted with chronic medical ailments, including hypertension and diabetes.[2] Sp. Rept., Attach. 3, p. 1. In 2005, Plaintiff was diagnosed with prostate cancer and transferred to LARC for treatment. Id. Plaintiff claims that the day after he arrived at LARC, he complained to prison personnel about pain emanating from a "pinched nerve to [his] right groin." Compl., p. 2. A few days later, Dr. Stites saw Plaintiff to conduct an initial assessment of Plaintiff's current condition and needs.[3] Sp. Rept., Attach. 3, p. 1. During the initial assessment examination, Plaintiff reported that he had been diagnosed with cancer earlier in the year and that he was supposed to be taking medicine to control his blood sugar but had not because of some sort of mistake. At the time Dr. Stites examined Plaintiff, he had current prescriptions for ten different drugs. However, Plaintiff indicated that he was not taking the majority of them, including an antacid, the blood sugar drug, a nasal spray, a blood thinner, Aspirin, and

---

[2] The facts recited here, deduced from the summary judgment evidence submitted by the parties, are presented in the light most favorable to Plaintiff with every reasonable inference drawn in his favor. See Sealock v. Colorado, 218 F.3d 1205, 1207 (10th Cir. 2000). Additionally, because Plaintiff is proceeding pro se, his pleadings have been liberally construed and held to a less stringent standard than attorney-drafted pleadings. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

[3] Plaintiff was transferred to LARC from the Oklahoma State Reformatory in Granite, Oklahoma, on July 20, 2005. Sp. Rept., Attach. 1, p. 3. Plaintiff claims that on July 21, 2005, the day after he arrived at LARC, he was seen by Dr. Stites, and not on July 26, 2005, as the DOC's medical records show. Response at unnumbered page labeled "Objections Continued." Plaintiff has not produced anything to show that he was seen on July 21 instead of July 26 as Defendants' records show. See generally Resp. Ultimately, the discrepancy has no bearing on the outcome of Plaintiff's claims and the undersigned has evaluated them based on the documented July 26th examination.

Neurontin for pain. Records from the initial assessment examination do not indicate that Plaintiff made any mention of ongoing pain or that Dr. Stites was aware that Plaintiff complained of groin pain earlier in the week. Id.

Based upon his evaluation of Plaintiff, Dr. Stites instructed Plaintiff to resume taking the blood sugar medication, the antacid, and Aspirin, but discontinued Plaintiff's prescriptions for the blood thinner, the nasal spray, and Neurontin. Additionally, Dr. Stites ordered lab tests and discontinued Plaintiff's prescriptions for two hypertension drugs and one diabetes medication that Plaintiff was actively taking at the time of the examination. Id. at 2.

The day after the initial assessment examination, Plaintiff complained to Defendant Bond that he had been diagnosed at other DOC facilities as a chronic pain patient and that Dr. Stites' decision to discontinue his Neurontin prescription for pain denied him adequate medical care. In response, Bond noted that physicians determine which medications to prescribe a patient and directed Plaintiff to discuss his concerns with Dr. Stites at his next chronic care appointment. Response, Exhibit 1.[4]

On August 14, 2005, approximately three weeks after Dr. Stites initially examined Plaintiff, Plaintiff's right leg gave out and he fell. Sp. Rept., Attach. 3, p. 3. He was immediately taken to the infirmary in a wheelchair where a nurse examined him. The nurse measured Plaintiff's vital signs, examined his eyes, and asked him questions to determine the extent of his injury. The nurse determined that Plaintiff's injuries were not

---

[4] Plaintiff filed a "Brief in Support" with several attached documents in response to Defendants' motion to dismiss and motion for summary judgment. The undersigned has construed this pleading as a response and its attached exhibits as summary judgment evidence.

serious, although she did note that he had a slight bump on his forehead and that he complained of left shoulder pain.  Id.  In a Grievance filed as a result of the fall, Plaintiff claimed that he was "knocked unconscious" but the record of the examination following the fall does not show that he told the nurse that he lost consciousness.  Sp. Rept., Attach. 2, p. 2; Resp. Exs. 4-5.  The nurse instructed Plaintiff to put ice on the injured areas and to report to sick call if he had any continuing problems.  Sp. Rept., Attach. 3, p. 3.

Plaintiff did not report to sick call the day after the fall because he had cancer treatment scheduled for the entire day.  However, he did show up at sick call the morning after his cancer treatment.  Id. at 4.  At the sick call, a physician's assistant examined Plaintiff and directed that he be given a wheelchair for 14 days and have only one hand cuffed during transport.  Id.   Dr. Stites did not treat Plaintiff in conjunction with this fall.[5]  See id. at 4-5.

One week after the fall, Plaintiff submitted a Request to Staff ("RTS") form to Dr. Stites accusing him of ignoring Plaintiff's medical needs, demanding monetary compensation, and asking him to reinstate the Neurontin prescription that was

---

[5] The summary judgment evidence shows that Plaintiff fell again at LARC in October 2006 and was taken to the emergency room of a private hospital where the attending physician prescribed Lortab to Plaintiff for pain.  Resp., Exs. G, M, "Special Exhibit."  When Plaintiff returned to LARC, a physician's assistant refused to give Plaintiff Lortab, citing DOC policy prohibitions against distributing narcotic pain medication to inmates for chronic pain.  Id.; Sp. Rept., Attach. 3, pp. 6-8.  Plaintiff makes a few fleeting references to this incident in his response to the motion to dismiss/motion for summary judgment and some of the medical records generated as a result of this October 2006 fall are included in the medical records attached to the Special Report.  However, the undersigned has not construed the Complaint to include claims relating to the DOC's treatment (denial of access to Lortab) from the October 2006 fall.  This suit was already on file when Plaintiff fell in October of 2006, Plaintiff did not amend the Complaint, and nothing shows that Plaintiff has exhausted administrative remedies for these claims.

discontinued after the initial examination. In response, Dr. Stites told Plaintiff to make a sick call appointment. Resp., Ex. 2.

Two weeks later, Plaintiff submitted another RTS to Dr. Stites complaining that he failed to respond to Plaintiff's demand for compensation as a result of the fall. Dr. Stites referred the RTS to Bond, who informed Plaintiff that she was unsure about what relief he sought and that he needed to be more specific with his complaints. Id. at Ex. 3. One week later, on the day Plaintiff completed cancer treatment, Dr. Stites re-prescribed Neurontin to Plaintiff. Sp. Rept., Attach. 3, p. 4.

Plaintiff did not submit another RTS elaborating on his demands to Dr. Sites or Bond. Instead, after he received the prescription for Neurontin, he filed a Grievance complaining about Dr. Stites' decision to discontinue the "prescribed medical treatment" other physicians ordered for Plaintiff's pain and Bond's refusal to intervene with Dr. Stites' treatment decisions. The Grievance asked Bond to "intervene . . . by acknowledging other doctor's protective treatment for [Plaintiff]." Resp., Ex. 4. Bond denied Plaintiff compensation and relief, pointing out that Dr. Stites was Plaintiff's attending physician, that he had reviewed Plaintiff's medical records and orders entered at other DOC facilities, and that his treatment plan was based upon his own assessment of Plaintiff's current condition and needs. She also noted in her response to the Grievance that Plaintiff had received medical treatment for the fall. Id. at Ex. 5. On appeal, the Reviewing Authority granted Plaintiff unspecified partial relief and instructed him to address his health concerns through the sick call process at LARC. Id. at Ex. 6.

5

Plaintiff contends that Dr. Stites' decision to discontinue the prescription for pain medication denied him access to preventative treatments designed to keep him from injuring himself. Compl., pp. 2-3. He alleges that the fall and attendant injuries were the direct result of Dr. Stites' decision to discontinue the pain medication during Plaintiff's cancer treatment. Plaintiff contends that in making these decisions, Dr. Stites purposefully and intentionally ignored his serious medical needs and another doctor's "prescribed protective treatment." Id. at 3. Plaintiff alleges that Bond, acting as Dr. Stites' supervisor, could have, but failed to override Dr. Stites' treatment decisions which would have prevented Plaintiff's "foreseeable" fall and resulting injuries. Id. at 4. Plaintiff seeks compensatory and punitive damages, restoration of 1,825 earned time credits, and attorney's fees. Id. at 5.

In the motion to dismiss/motion for summary judgment, Defendants contend that Plaintiff has failed to establish that Dr. Stites was deliberately indifferent to his serious medical needs and that he simply disagrees with the care that Dr. Stites provided. Motion, pp. 5-6, 8-9. Defendants also contend that Plaintiff has not established that Bond acted with a sufficiently culpable state of mind or was personally involved in bringing about the alleged deprivation of Plaintiff's Eighth Amendment rights. Id. at 6-7. Both Defendants also assert qualified immunity as a bar to proceeding with suit against them in their individual capacities, Eleventh Amendment immunity as a bar to proceeding with claims against them in their official capacities, and that Plaintiff may not obtain some of the relief requested in a § 1983 action. Id. at 10-12.

DISCUSSION

*A.    Rule 12(b)(6) Motion to Dismiss*

A complaint is subject to Rule 12(b)(6) dismissal for failure to state a claim upon which relief can be granted when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Courts reviewing the sufficiency of a complaint presume that all of the plaintiff's factual allegations are true and construe them in the light most favorable to the plaintiff. Hall, 935 F.2d at 1109. When evaluating a complaint tested by a motion to dismiss for failure to state a claim, the court may consider the complaint and any documents attached to the complaint as exhibits. Id. at 1112.

    1.    Time Credits

The sole remedy in federal court for a prisoner seeking restoration of good-time credits is a writ of habeas corpus. Preiser v. Rodriguez, 411 U.S. 475, 490 (1973). Consequently, claims for the restoration of time credits are not cognizable in a § 1983 action. Slayton v. Willingham, 726 F.2d 631, 635 (10th Cir. 1984) (per curiam). Plaintiff can prove no set of facts showing that he is entitled to restoration of time credits in this action and, therefore, Defendants' motion to dismiss the portion of the Complaint seeking restoration of time credits should be granted.

    2.    Official Capacity

A suit for damages may be brought against a state official in either an official or individual capacity. A claim brought against a state official in an official capacity is

effectively an action against the state. See Kentucky v. Graham, 473 U.S. 159, 165 (1985); Whitney v. New Mexico, 113 F.3d 1170, 1173 (10th Cir. 1997). The Eleventh Amendment prohibits suits for damages from state officials sued in an official capacity from proceeding in federal court. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 70 (1989).

Plaintiff's complaint does not specify whether he seeks damages from Defendants in their individual or official capacities, although the response to the motion to dismiss and motion for summary judgment seems to indicate that Plaintiff sues Defendants in only their individual capacities. Resp., "Preliminary Statement." But to the extent Plaintiff seeks damages from Defendants in their official capacities, the suit is one against the State of Oklahoma.

Oklahoma has not waived its Eleventh Amendment immunity from suit in federal court. Okla. Stat. tit. 51, § 152.1(B) (2006); Ramirez v. Okla. Dep't of Mental Health, 41 F.3d 584, 589 (10th Cir. 1994), overruled in part on other grounds by Ellis v. Univ. of Kan. Med. Ctr., 163 F.3d 1186 (10th Cir. 1998). The enactment of 42 U.S.C. § 1983 did not abrogate Oklahoma's Eleventh Amendment immunity. See Quern v. Jordan, 440 U.S. 332, 345 (1979). Because the State has not waived its Eleventh Amendment immunity from suit, Defendants' motion to dismiss the Complaint should be granted to the extent that the Defendants are sued in their official capacities.

The remainder of Plaintiff's claims will be considered for summary judgment as they are too vaguely alleged to evaluate without reference to materials outside the pleadings. See Hall, 935 F.2d at 1110-11.

B.     *Motion for Summary Judgment*

Summary judgment is appropriate when the pleadings and evidentiary materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute is "genuine" if the evidence permits a reasonable jury to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are "facts that might affect the outcome of the suit under the governing law." Id. In considering a motion for summary judgment, the court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party. Sealock, 218 F.3d at 1207.

To obtain summary judgment, the moving party need not affirmatively negate the nonmovant's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Instead, the moving party initially bears the burden only of "showing - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." Id. at 325 (internal quotations omitted). Once the moving party has satisfied this burden, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact. Id. at 324. The nonmoving party "may not rest upon mere allegation" in his pleadings to satisfy this requirement. Anderson, 477 U.S. at 256. Rather, the nonmoving party must "go beyond the pleadings and by . . . affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324 (internal quotations omitted).

A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment's proscription of cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). Eighth Amendment claims alleging deliberate indifference to an inmate's serious medical needs have an objective component, whether the deprivation is sufficiently serious, and a subjective component, whether the prison official acted with a sufficiently culpable state of mind. Perkins v. Kan. Dep't of Corr., 165 F.3d 803, 809 (10th Cir. 1999). A medical need is "sufficiently serious" if the condition "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir. 1999) (citations and quotations omitted). To show that a prison official acted with a sufficiently culpable state of mind, a plaintiff must establish that the official knew of and disregarded an excessive risk to the inmate's health or safety. Farmer v. Brennan, 511 U.S. 825, 837 (1994).

### 1. Defendant Stites - Individual Capacity

Plaintiff's complaint against Dr. Stites is that the decision to discontinue the prescription for pain medication amounted to deliberate indifference to Plaintiff's serious medical needs and a denial of adequate medical care which caused him to fall and sustain injuries. Compl., pp. 2-3. In their motion, Defendants claim that Dr. Stites was not deliberately indifferent to Plaintiff's serious medical needs and that Plaintiff merely disagreed with the treatment that Dr. Stites provided. Mot., p. 9.

That a prison official acted with a sufficiently culpable state of mind by having awareness of an excessive risk to inmate health or safety yet failing to respond

10

reasonably, may be demonstrated with inferences drawn from circumstantial evidence. See Farmer, 511 U.S. at 842, 844; Oxendine v. Kaplan, 241 F.3d 1272, 1276 (10th Cir. 2001).  The inmate must show that the prison official was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the official drew that inference.  Farmer, 511 U.S. at 837.  Deliberate indifference also exists where prison officials intentionally deny, delay access to, or interfere with an inmate's necessary medical care.  See Estelle, 429 U.S. at 104-105.  However, a delay in providing medical care constitutes deliberate indifference only "where the plaintiff can show that the delay resulted in substantial harm."  Sealock, 218 F.3d at 1210.

Under this standard, the inmate must show more than a negligent failure to provide adequate medical care because such failure, even if it amounts to medical malpractice, does not give rise to a constitutional violation merely because the victim is an inmate.  Estelle, 429 U.S. at 106; Perkins, 165 F.3d at 811.  Morever, a prisoner who simply disagrees with a diagnosis or prescribed course of treatment does not state a constitutional violation.  Perkins, 165 F.3d at 811.

Defendants have demonstrated that there is an absence of proof showing that Dr. Stites was aware of and disregarded Plaintiff's serious medical needs.  Plaintiff's LARC medical records from the initial visit with Dr. Stites do not indicate that Plaintiff complained to Dr. Stites about groin pain or apprised Dr. Stites that he had made such a complaint earlier in the week.  Sp. Rept., Attach. 3, p. 1.  The only conditions documented in the medical records from Plaintiff's initial examination show that Plaintiff told an interviewing medical staff member and Dr. Stites about his prostate cancer,

hypertension, and diabetes. Id. at 1-2. The records from Plaintiff's interview before the examination with Dr. Stites also show that Plaintiff had been prescribed Neurontin for pain but was not taking it. Id. at 1, 9. Nothing contained in these records gave Dr. Stites any reason to believe that the decision to officially take Plaintiff off Neurontin would lead to any change in his present condition since it was a mere formalization of what the information contained in the records led Dr. Stites to believe was already occurring in practice. See id. at 1-2, 9. Further, nothing in these records shows that Dr. Stites was aware that Plaintiff was experiencing or complained of groin pain resulting from a pinched nerve. See id. at 1-2.

In contrast, Plaintiff has failed to demonstrate that Dr. Stites was aware of facts from which he could infer that a substantial risk of serious harm to Plaintiff existed if the pain prescription was discontinued. Plaintiff attempts to raise a fact issue concerning Dr. Stites' awareness of Plaintiff's chronic pain treatment by stating in the response that he "informed Doctor Stities [sic] that he hadn't taken any of his medication, **since he left GRANITE FACILITY**," and that he "never told Doctor Stities [sic], that he wasn't taken [sic] any medications." Resp., "Preliminary Statement" (emphasis added). Plaintiff also alleges that "Defendants [were] well aware of . . . [his] medical needs" because both he and medical staff from the facility where Plaintiff was housed before coming to LARC informed Defendants of his conditions. Id. at 3. In support of these contentions, Plaintiff submitted some medical records from 1999 and 2002. These records do not show that Plaintiff received chronic pain treatment. Instead, they only establish that Plaintiff was treated for a fall caused by a hernia and hip pain, was scheduled for hernia surgery, and

12

suffers from several ailments including diabetes, hypertension and glaucoma. See id. at Exs, J-L.

Critically, Plaintiff has failed to produce summary judgment evidence showing that he told Dr. Stites or any other LARC medical staff member at the initial assessment examination that he had only been off Neurontin during the six-day period preceding the examination with Dr. Stites or that he was currently experiencing pain. An allegation to this effect in an unverified pleading is not competent summary judgment evidence sufficient to raise a genuine issue of material fact. See Hall, 935 F.2d at 1111. Moreover, even if Plaintiff did receive chronic pain care at other DOC facilities which would have been apparent from a review of his medical records, Plaintiff has not shown that his medical records from previous DOC facilities were available to Dr. Stites at the time of the initial assessment examination. Further, the simple failure to review a patient's medical records before beginning treatment does not amount to a constitutional violation. See Perkins, 165 F.3d at 811 (explaining that mere negligence or medical malpractice does not state a constitutional violation). Moreover, nothing in the summary judgment evidence indicates that Dr. Stites was aware that Plaintiff would be at an increased risk for falling if the pain prescription was terminated. See Sp. Rept., Attach. 3, pp. 1-2; see generally Resp.

Although Plaintiff complains that Dr. Stites' decision to discontinue the pain medication denied and delayed him access to adequate medical care and interfered with a course of treatment that physicians at other DOC facilities prescribed, Dr. Stites is a medical professional with the freedom to make treatment decisions based upon his own

independent examination and assessment of Plaintiff's condition. See Estelle, 429 U.S. at 107. That Dr. Stites did not regimentally continue the course of treatment prior physicians prescribed does not mean that he denied or interfered with Plaintiff's right to adequate medical care. Moreover, Dr. Stites examined Plaintiff as he was about to begin cancer treatment for the purpose of treating his medical conditions appropriately in light of Plaintiff's current medical condition. Sp. Rept., Attach. 3, p. 1.

Additionally, even though Dr. Stites ultimately re-prescribed Neurontin for Plaintiff's pain, that Dr. Stites took such action after Plaintiff completed cancer treatment does not establish a delay in providing adequate medical care. Sealock, 218 F.2d at 1210 (delay in providing medical care is actionable only where substantial harm results from the delay). At most, Plaintiff has shown that he disagreed with the course of treatment that Dr. Stites prescribed.

Defendants also have demonstrated that there is an absence of proof showing that Dr. Stites or any other LARC medical staff member was aware of and disregarded Plaintiff's serious medical needs stemming from Plaintiff's fall and left shoulder injury. Defendants have produced proof showing that shortly after Plaintiff's fall was reported, he was examined by a nurse who measured his vital signs, examined his eyes, and asked him questions to determine the extent of his injury. She concluded that Plaintiff's injuries were not serious and advised him to put ice on the injured areas and report to sick call if he had any continuing problems. Sp. Rept., Attach. 3, p. 3. When Plaintiff did report to sick call two days later, a physician's assistant examined Plaintiff and directed that he be given a wheelchair for 14 days and have only one hand cuffed during transport. Id.

at 4. A few months later, Plaintiff was seen again after he complained of pain in his left shoulder resulting from the fall. At this examination, it was noted that Plaintiff had a full internal and external range of motion but was experiencing shoulder pain. Thus, he was treated with an injection to alleviate the shoulder pain. Id. at 5.

In response, Plaintiff has not produced any summary judgment evidence demonstrating that prison medical personnel knew of and disregarded an excessive risk to his health or safety or were deliberately indifferent to his serious medical needs. See generally Resp. Plaintiff produced a few Request for Medical Services ("RMS") forms that he executed to obtain treatment for his shoulder injury and for boils in support of this claim. The first form was completed two months after the fall which resulted in a scheduled appointment the day after Plaintiff submitted the RMS. See id. at Ex. A. Apparently, Plaintiff received treatment for a staph infection but did not receive treatment for his shoulder injury at this appointment, but Plaintiff's own notes on this form indicate that the failure to treat it was not deliberate, but simply because "Dr. Jones forgot to look at my left shoulder." See id.

Plaintiff also submitted a sick call log sheet with his own notation that he was "Denied Treatment" but this sheet does not demonstrate that Plaintiff sought and was denied treatment related to his shoulder at this appointment. See id. at Ex. B. Plaintiff purportedly filled out another RMS form on December 13, 2005, but this form, unlike Plaintiff's other RMS forms submitted as summary judgment proof, bears no indicia that it was ever actually submitted to medical personnel, as the place for a response is blank. See id. at Ex. D. In response to another RMS form that Plaintiff completed on December

15

16, 2005, Plaintiff received the aforementioned shoulder injection. See id. at Ex. F. Plaintiff has not produced evidence sufficient to raise a fact issue on his claim that medical personnel were deliberately indifferent to his serious medical needs. Notably, nothing has been produced to even show that the only Defendants named in this action were personally involved in providing or failing to provide treatment for Plaintiff's shoulder injury, which is an essential element of Plaintiff's claims. See Bennett v. Passic, 545 F.2d 1260, 1262-63 (10th Cir. 1976).

As the nonmoving party faced with a motion for summary judgment, Plaintiff bore the burden to "go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [his] case in order to survive summary judgment." McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1128 (10th Cir. 1998). Because Plaintiff has failed to designate specific facts sufficient to establish an essential element of his claim, that Dr. Stites was deliberately indifferent to his serious medical needs, Dr. Stites is entitled to summary judgment. See Johnson v. Mullin, 422 F.3d 1184, 1187 (10th Cir. 2005).

2.  Defendant Bond - Individual Capacity

Defendants contend that Bond is entitled to summary judgment because she did not personally participate in bringing about the alleged deprivation of Plaintiff's Eighth Amendment right to adequate medical care. Mot., p. 7. Plaintiff's response does not directly engage this argument. See generally Resp.

Personal participation is an essential element of a § 1983 claim. Bennett, 545 F.2d at 1262-63. As a result, a supervisor incurs no § 1983 liability for a subordinate's

conduct which results in the deprivation of a constitutional right unless an "affirmative link" exists between the deprivation and either the supervisor's personal participation or the failure to supervise. Meade v. Grubbs, 841 F.2d 1512, 1527-28 (10th Cir. 1988) (citations and quotations omitted).

Defendants have shown that Bond's involvement in Plaintiff's medical care was limited to responding to Plaintiff's Grievance and RTS forms demanding compensation from Dr. Stites and a change to the prescribed treatment. Sp. Rept., Attach. 2, pp. 3, 6. She did not personally make any treatment decisions concerning Plaintiff's medications or have any involvement whatsoever in providing medical care to Plaintiff after the fall. See id. In contrast, Plaintiff has not demonstrated an affirmative link between Bond's action or inaction and the alleged deprivation. Indeed, the evidence produced shows that Bond deferred to Dr. Stites' judgment because he was Plaintiff's treating physician, an action that DOC policy (unchallenged here) requires when a health administrator is not a licensed physician. Resp., Ex. 5; Okla. Dept. of Corr. Mem. Op. 14101, I.C (Nov. 29, 2006). Plaintiff has not shown that Bond is a physician with authority to make treatment decisions or override or intervene in the treatment provided by a physician. Because Bond did not personally participate in bringing about any alleged deprivation of Plaintiff's Eighth Amendment right to adequate medical care, she is entitled to summary judgment. See Chase v. Ward, No. 98-4100, 2000 WL 572711, at *2 n.5 (E.D. Pa. May 10, 2000) (finding that a prison official who was not a medical official was not deliberately indifferent merely for failing to respond directly to the medical complaints

of an inmate who was being treated by professional staff on whose expertise the official was entitled to rely, citing <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 68 (3d Cir. 1993)).

Because the Defendants have established their entitlement to summary judgment on Plaintiff's claims, there is no need to evaluate the qualified immunity defense.

<u>RECOMMENDATION</u>

The facts alleged in the Complaint show that there is no set of circumstances under which Plaintiff would be entitled to all of the relief requested. Accordingly, it is recommended that Defendants' motion to dismiss [Doc. No. 29] be **GRANTED** in part. Furthermore, Defendants have established their entitlement to summary judgment on the remainder of Plaintiff's claims. Accordingly, Defendants' motion for summary judgment [Doc. No. 29] should be **GRANTED** on the remainder of Plaintiff's claims.

Plaintiff is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by May 11, 2007, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1. Plaintiff is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal issues contained herein. <u>Moore v. United States</u>, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED** this 26th day of April, 2007.

_____
DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE